Jerome L. HEIBEL (Plaintiff), Respondent,

v.

John William ROBISON (Defendant), Appellant.

No. 29821.

St. Louis Court of Appeals.

Missouri.

July 8, 1958.

Dearing, Richeson & Weier, Samuel Richeson, Hillsboro, for appellant.

Thurman, Nixon & Blackwell, Earl R. Blackwell, Hillsboro, for respondent.

RUDDY, Presiding Judge.

This is an action by plaintiff to recover damages for personal injuries sustained as a result of a collision between an automobile in the control of defendant and a pick-up truck operated by George W. Miller. From a judgment in favor of plaintiff in the sum of $2,000 defendant appeals.

Plaintiff was a passenger in the pick-up truck as it was being operated over Highway A in Jefferson County, Missouri, in a westerly direction. At a point approximately 1.1 miles east of the intersection of Highway A with Highway Z in Jefferson County, Missouri, the pick-up truck collided with a 1950 Chrysler automobile. Plaintiff and the driver of the pick-up truck testified that as the pick-up truck was proceeding around a curve in said Highway A they were suddenly faced with the automobile of the defendant, which, they testified, was motionless on

their side of the highway and was facing them with bright head lamps burning. Both witnesses said defendant's car was parked with a part of the car on the wrong side of the highway. The driver of the pick-up truck testified that he was blinded by the bright head lamps on defendant's automobile and in an attempt to avoid a collision he swerved the pick-up truck to the right. The left front fender of the pick-up truck struck the left front fender of the Chrysler automobile. After the collision plaintiff was found on the ground. He did not know how he got out of the truck.

Defendant and numerous other witnesses testified that defendant's car was not on the highway. All of defendant's witnesses testified that the Chrysler automobile was eight to ten feet from the highway, parked in the front yard of Mrs. Helen Dow, whom defendant and others with him were visiting. The witnesses for defendant who were in a position to see the headlights on defendant's car said they were on low beam and were not bright. Defendant and his witnesses said the pick-up truck pulled off the highway and into the yard where the Chrysler was parked. Defendant and some of his witnesses said the pick-up truck left the highway on which it was being driven 175 feet east of the point of collision.

We have recited the above facts to show the sharp conflict between the evidence of plaintiff and defendant on the issue of where the collision took place. We need not recite any other facts concerning the collision because no point involving it has been raised.

One of the points relied on by defendant challenges Plaintiff's Instruction No. 2 on the measure of damages. Defendant contends that the instruction permitted the jury to consider the permanency of plaintiff's injuries and medical expenses in fixing the amount of damages, although there was no evidence to support either item. An examination of the evidence, related hereinafter, demonstrates that this point

of defendant must be sustained. Plaintiff produced no medical witnesses. The only evidence concerning plaintiff's injuries was the testimony of plaintiff and certain excerpts from a hospital record that were read to the jury.

After the accident plaintiff was taken to a Dr. Yoskit at Festus, Missouri, and then to the Alexian Brothers Hospital in St. Louis. Before plaintiff was removed from the scene of the accident he said he felt pain in both knees and that it felt like there was a hole in one of them. He tried to get up and could not. He was helped to his brother's car by George Miller, his brother and the defendant. He did not know what was wrong with his leg. At the hospital he said the doctor "got some kind of a metal, about three feet long, and kind of curved. He put my leg in it, kept it in there, so it couldn't bend, to keep the leg straight until the next morning." The next morning plaintiff's leg was swollen and a contemplated operation had to be postponed until the next day. At the time of the operation plaintiff was placed under an anesthetic and could not tell what was done during the operation. When he returned to his room after the operation he had a cast on his left leg which extended from his ankle to his hip. He left the hospital one week after he had entered. He was taken from his room to the automobile in a wheel chair and with the aid of crutches entered the automobile. Ten days later he returned to the doctor (we assume at the hospital), at which time the doctor removed the cast and he "took the stitches out." During the ten days prior to his visit to the doctor, plaintiff had to use the crutches in order to walk. At the time of this visit to the doctor another cast, similar to the first one, was placed on plaintiff's left leg. He thought this cast remained on his leg "six or seven weeks, maybe two months." Thereafter the cast was removed by the doctor at his office.

The accident occurred July 3, 1954. Prior to the accident plaintiff was working for Ablan Truck Service. He had been

working for this company several years and averaged approximately $80 per week in wages. Plaintiff testified that the first day he went back to work, which was the middle of December 1954, his leg began to stiffen about noon time and he had to call the boss to send another driver to bring in the truck he was driving. He further testified that two or three days later he tried again to drive a truck and suffered the same experience. He worked about five days during the month of December 1954. He said that during 1955 he worked at intervals. He left the employ of Ablan Truck Service the latter part of 1955 because he could not continue doing the work of driv-' ing a truck. He testified that presently he was working for his sister earning $35 per week.

When plaintiff was asked what the condition of his leg was at the time of the trial, he answered, "It bothers me if I keep it in one position too long, say a couple of hours. If I sit steady in one position when I get up I have to get it working, to get it awake again. If I am out anywhere where there is dampness it still bothers me just the same. If I stand too long in one position, well, it just don't function right." He further testified that he could feel pressure against the knee all of the time. In this connection he said, "It feels like something cut on the side. It feels like something cut on the edge. What is in there, I don't know." The above constitutes the testimony of plaintiff pertinent to the measure of damages suffered by plaintiff.

The only other evidence offered by plaintiff pertinent to his injuries were portions of the hospital record of the Alexian Brothers Hospital, which were read to the jury by counsel for plaintiff. The portions read to the jury showed that plaintiff sustained "an injury to his left knee which subsequent films showed to be a fracture multiple of patella." The "Operative Record" read to the jury showed that plaintiff had a comminuted fracture of the left patella with rupture of the quadriceps tendon; that in the operation plaintiff was placed under a

general anesthesia and "a horizontal curved incision was made to expose the quadriceps rent and the remainder of the tendon. Transverse incision (was) made through medial and lateral portions of quadriceps tendon where the large hole in the tendon had not extended and the patella was excised subperiosteally. The tendon was repaired first. The large long longitudinal superior tear was closed with O chromic catgut interrupted suture. The lower pole of the quadriceps or the patellar tendon was pulled up and the horizontal tear was repaired the same way. The tendon was imbricated from below above as much as necessary and the subcutaneous fascia closed with OO chromic and running silk to skin." A cylinder plaster cast was applied to the leg. The "Radiographic Examination" contained in the hospital record and read to the jury showed the following: "Radiographic examination of left knee area in anteroposterior and lateral views through an aluminum splint reveals a comminuted fracture of the patella. There is inferior displacement and some rotation of the smaller distal fragment. There is also some displacement of the proximal fragment as well as the larger of the two distal (intermediate fragment) fragment."

Plaintiff's Instruction No. 2 on the measure of damages instructed the jury that, among other things, it should take into consideration the character and extent of plaintiff's injuries, if any, "and whether they are permanent in nature; * * *."

 It is a fundamental rule that an instruction to the jury should never submit an issue which is not supported by evidence. The rule applicable to the point under review is found in Weiner v. St. Louis Public Service Co., Mo., 87 S.W.2d 191, loc. cit. 192, wherein the court said:

"' "To justify a recovery for apprehended future consequences, there must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury. To say of a

thing it is permanent means that it will continue regardless of a contingency or fortuitous circumstance." Lebrecht v. United Rys. Co. of St. Louis (Mo.Sup.) 237 S.W. 112, 114. Proof of a condition which may cause future trouble is not necessarily proof of a permanent injury, the former may persist after the trial but not continue to exist permanently while the latter is a physical or mental impairment or disability which will last throughout life, and there is a distinction between damages which may reasonably result in the future and damages allowable as for a permanent injury. Bante v. Wells (Mo.App.) 34 S.W.2d 980; Stahlberg v. Brandes (Mo.App.) 299 S.W. 836; Colby v. Thompson (Mo.App.) 207 S.W. 73. To recover damages for permanent injury the permanency of the injury must be shown with reasonable certainty and while absolute certainty is not required mere conjecture or likelihood, or even a probability, of such injury will not sustain the allowance of damages therefor.' Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 61 S.W.2d 328, loc. cit. 334."

The rule stated in the Weiner case has been followed in State ex rel. Kansas City Public Service Co. v. Shain, 350 Mo. 316, 165 S.W.2d 428, and Berry v. McDaniel, Mo.App., 269 S.W.2d 666.

■■ It is the burden of plaintiff when submitting an instruction which permits an award for permanent injuries to support the instruction with evidence which shows the permanency of his injuries with reasonable certainty. When this rule is applied to the evidence in the instant case it shows without doubt that plaintiff has failed to meet the necessary requirement. Plaintiff's evidence does not show with reasonable certainty the permanency of his injuries. As a matter of fact there is not a scintilla of evidence pointing in that direction. No medical witness testified for plaintiff. The hospital record was devoid

of evidence touching on the permanency of plaintiff's injuries. All of plaintiff's testimony about his injuries was concerned with his condition prior to and at the time of the trial. The hospital record showed that plaintiff sustained a comminuted fracture of the left patella with rupture of the quadriceps tendon. It is not common knowledge that fractures of bones and ruptures of muscles and tendons are permanent injuries. In some such cases the injuries are of a nature that the medical experts consider the condition permanent. See Brunk v. Hamilton Brown Shoe Co., 334 Mo. 517, 66 S.W.2d 903, loc. cit. 910, 911, and State ex rel. Kansas City Public Service Co. v. Shain, supra. In other cases of similar nature the doctors do not consider the injuries permanent. See Lebrecht v. United Rys. Co. of St. Louis, Mo., 237 S.W. 112, loc. cit. 113(1) and State ex rel. Kansas City Public Service Co. v. Shain, supra. In the latter case (State ex rel. Kansas City Public Service Co. v. Shain) the court concluded that as a general rule, fractures of the bones are not injuries that may be considered permanent, absent substantial evidence to that effect. To the same effect we would add ruptures of tendons. It is a matter of frequent occurrence in the trial of personal injury cases for medical witnesses to differ on the permanent nature of fractures of bones and ruptures of muscles and tendons. We think the injuries sustained by plaintiff were such as to require skilled medical witnesses to determine whether any permanent effects will remain from the injuries sustained. There is nothing in the evidence of the instant case from which a lay jury could form an intelligent and reasonable opinion as to the permanency of plaintiff's injuries. Under the record in this case the jury would have to indulge in conjecture and speculation on the issue of the permanency of plaintiff's injuries. It was prejudicially erroneous to permit the jury to consider the permanent nature of plaintiff's injuries.

■ This same instruction permitted the jury to consider medical expenses in fixing

the amount of damages. There was no evidence as to medical expense or the amount thereof. What we have said above concerning the need of evidence of permanent injuries before they may be considered by the jury is equally applicable to the item of medical expenses. Medical expenses are items of special damage and to be allowed must be supported by substantial evidence. Vogelgesang v. Waelder, Mo. App., 238 S.W.2d 849, loc. cit. 857.

■■ Plaintiff contends that the aforementioned errors contained in his Instruction No. 2 were not prejudicial, because the amount of the verdict was such as to show that the jury did not award damages for permanent injuries or medical expenses. It would be pure speculation on our part for us to hold that the jury did not include in its verdict damages for permanent injuries or medical expenses. Also, in view of the sharp conflict in the evidence as to the point of collision between the pick-up truck and the Chrysler and because the trial court permitted plaintiff to testify to the number of children he had, we cannot say that the errors in the instruction reviewed did not materially affect the jury's consideration of the issue of defendant's negligence.

In the trial plaintiff was asked how many children he had. Defendant objected to the question. The trial court overruled the objection and told plaintiff, "Go ahead, tell him how big a family you have." Plaintiff testified he had eight children. Such testimony was clearly incompetent and has been held to be inadmissible in a long line of cases since Dayharsh v. Hannibal & St. J. Ry. Co., 103 Mo. 570, 15 S.W. 554. For later cases, holding the admission of such testimony incompetent, see State ex rel. Dick & Bros. Quincy Brewery Co. v. Ellison, 287 Mo. 139, 229 S.W. 1059; Franklin v. Kansas City, 213 Mo.App. 154, 248 S.W. 616; Holtz v. Daniel Hamm Drayage Co., 357 Mo. 538, 209 S.W.2d 883, and Meade v. Kansas City Public Service Co., Mo., 250 S.W.2d 513.

The admission of this incompetent evidence was prejudicial to defendant and because of this error and the errors contained in Plaintiff's Instruction No. 2, this case must be reversed and remanded. It is so ordered.

ANDERSON, J., concurs.

MATTHES, J., no longer member of this court.