Kenneth R. SETTELL, Plaintiff-Respondent,

v.

Michael G. HORGAN, Defendant-Appellant.

No. 23684.

Kansas City Court of Appeals.

Missouri.

Dec. 3, 1962.

**770**

McKenzie, Williams, Merrick, Beamer & Stubbs, James L. Williams and Keith K. Couch, Kansas City, for appellant.

Robert A. Schroeder, Robert A. Nelson, Walter A. Raymond, Kansas City, for respondent.

MAUGHMER, Commissioner.

Plaintiff, Kenneth R. Settell, had a $7,500 verdict and judgment against Michael G. Horgan, defendant, for personal injuries sustained in a collision of their two automobiles. On his appeal defendant presents two and only two assignments of error. He says the trial court erred in giving Instruction #5 because it is not supported by any evidence of the permanency of plaintiff's injuries and, second, either a new trial

or a remittitur should have been ordered because the judgment for $7,500 is excessive.

The accident occurred about 11:00 a.m. on December 15, 1959, at the intersection of 12th and Chestnut streets in Kansas City, Missouri. Plaintiff was operating his tractor-trailer north on Chestnut street and defendant was driving his Ford automobile west on 12th street.

Since the question as to defendant's negligence and consequent liability is neither disputed nor preserved by the appeal, we go directly into the evidence touching permanency of the injuries and the alleged excessiveness of the allowance.

Instruction #5, given by the court, is as follows:

"The Court instructs the jury that if you find the issues in favor of plaintiff, KENNETH SETTELL, you will assess his damages at such sum as you find and believe from the evidence will compensate him for the injuries, if any, sustained by him as shown by the evidence; and in estimating such damages you will take into consideration the physical injury, if any, inflicted; the bodily pain, if any, and mental anguish, if any, which he has endured and suffered and which he is reasonably certain to endure and suffer in the future; the character and extent, his injuries, if any, and whether they are temporary or permanent; his loss of earnings, if any, and the sums, if any, which he has expended for medical expenses by reason of such injury".

Defendant's assignment of error as to this instruction is restricted to the assertion that "it is not supported by any evidence of permanency". It is fundamental that an instruction should never submit an issue which is not supported by evidence. Heibel v. Robison, Mo.App., 316 S.W.2d 238, 241.

The question of the sufficiency of evidence to support an instruction for *per-*

*manent* injury is fully discussed by the court en Banc in Weiner v. St. Louis Public Service Co., Mo., 87 S.W.2d 191, 192, where it adopted, approved and quoted as follows from Lebrecht v. United Rys. Co. of St. Louis, Mo., 237 S.W. 112, 114:

" ' "To justify a recovery for apprehended future consequences, there must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury. To say of a thing it is permanent means that it will continue regardless of a contingency or fortuitous circumstance." * * * Proof of a condition which may cause future trouble is not necessarily proof of a permanent injury, the former may persist after the trial but not continue to exist permanently while the latter is a physical or mental impairment or disability which will last throughout life, and there is a distinction between damages which may reasonably result in the future and damages allowable as for a permanent injury. * * * To recover damages for permanent injury the permanency of the injury must be shown with reasonable certainty and while absolute certainty is not required mere conjecture or likelihood, or even a probability, of such injury will not sustain the allowance of damages therefor.' "

This declaration of the rule has been reiterated and approved by our courts many times during the ensuing years. Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 61 S.W.2d 328, 334; Brown v. Kansas City, Missouri, Mo.App., 311 S.W.2d 360, 362; Heibel v. Robison, Mo.App., 316 S.W.2d 238, 242, and Gulley v. Spinnichia, Mo.App., 341 S.W.2d 301, 307.

When the accident occurred plaintiff was twenty-seven years old. He finished the ninth grade, served in the army and has been a truck driver and farmer. At the time of the injury he was employed by Midwest Fruit Company as a truck driver with earnings of $87 per week. He is left-handed. In describing his injuries plaintiff said: "It knocked me out", that he was stunned, his left forearm and wrist were "hurting terrifically", his head and neck hurt and there was a numbness in his back. He testified that he was taken to General Hospital in an ambulance where x-rays were taken. Mr. Settell remained in the hospital for a few hours and on the next day saw Dr. Duncan, the company doctor, who gave him treatments for about three weeks, when he "went back to work". It was his testimony that his wrist, neck and shoulder got worse and he had "sharp pains like a dull toothache". He had never previously received any injury to his left arm, wrist, shoulder or back.

Plaintiff next consulted Dr. Campbell McCullough, an orthopedic surgeon, as his private physician. He saw this doctor more than sixty times and the bill was $960. Dr. McCullough's treatment consisted of heat treatments and traction. Mr. Settell said he worked for "the Churchill people" for about one year after the accident, that "every time I would start to pick up something my wrist would start hurting and after I was there approximately half-hour, if I was lifting freight, I would start getting headaches and my neck would get sharp pains". Plaintiff drove a cab for a while and then resumed as a truck driver for Midwest. He testified that the operation of the big truck caused his wrist to swell and he had pain in his neck. He took aspirin, anacin and bufferin regularly for the pain.

Dr. McCullough testified that he first examined plaintiff in December, 1959. He described plaintiff's complaints of pain and found some limitation of motion in the left wrist. There was tenderness in the main muscle upper half shoulder blade. He prescribed and gave modified diathermy. The doctor had x-rays made of both wrists, scapula, shoulder joint and cervical spine. He said these pictures revealed limitation of motion in the neck—right looked 20 percent of normal and the "left 20 on forward

flexion and extension, bending head and back". He also found the left shoulder blade and neck lacked "about 10 percent in abduction". Dr. McCullough declared these findings showed abnormality and were deviations from normal. He also found muscle spasm in the neck. There were no fractures. There was some atrophy of the left forearm muscles and the grip of the left hand was less than with the right, although patient was left-handed. On the question of permanency Dr. McCullough made these statements: "He has some permanent disability related to his left wrist and to his neck." "In my words, the injuries that the man sustained are painful and can lead to permanent disability". Referring to the injuries he found and described as to the left wrist and neck, "Oh, I think they are permanent, point to permanent disability".

Dr. William Duncan, company physician, was called on behalf of defendant and testified. He described his treatment of plaintiff which lasted about three weeks immediately after the accident. He saw plaintiff on February 6, 1960—two months after the accident—for an annual company examination and again on November 4, 1961. He said that on neither occasion did plaintiff voice any complaints. This doctor found no disability.

Dr. Paul Centner examined plaintiff for defendant on November 4, 1961, a few days before trial. He found no wasting or atrophy.

Was the evidence presented by plaintiff and by Dr. McCullough sufficient to justify submission of permanency? In Kiger v. Terminal Railroad Ass'n. of St. Louis, Mo., 311 S.W.2d 5, plaintiff sustained soft tissue injuries to the neck and lower back areas with contusions of the leg. There were no fractures. Plaintiff was thirty years of age, had finished the 8th grade and was a laborer, earning $360 per month. He was hospitalized for six days but had treatments for a long time thereafter for pain. One of plaintiff's medical witnesses, Dr. Parsons, described a compression injury in the cervical vertebrae, scar tissue in the neck and shoulder muscles which was permanent, and said—"plaintiff probably sustained a partial herniation of a disc in the low back". He said plaintiff had, in his opinion, sustained a permanent low back injury without reference to the question concerning a ruptured disc. The question of permanency was submitted. The verdict and judgment was for plaintiff in the amount of $30,000. The Supreme Court (p. 14) said: "We doubt that the testimony of Dr. Parsons is sufficient to reasonably support a conclusion that plaintiff sustained a ruptured disc." On appeal defendant contended there was insufficient evidence of permanency and that the verdict was excessive. The court approved submission as to permanency but required a remittitur of $10,000.

In Burnison v. Souders et al., 235 Mo. App. 1159, 35 S.W.2d 619, 626, plaintiff injured her head causing swelling and tenderness over her left eye. She testified that her eyesight was impaired and she suffered severe headaches. Her doctor said: "I am inclined to think there is more or less permanency with it". This court ruled that the testimony of plaintiff and her doctor was sufficient to justify submission of permanency to the jury.

In White v. St. Louis Public Service Co., Mo.App., 249 S.W.2d 498, 502, the treating physician, when asked for his opinion as to permanency, said: "I feel it is permanent" and when asked if it would continue for the remainder of her life, replied: "I think it will". The court said: "Such evidence justified the inclusion of the element of permanent injury."

In our case the trial was held almost two years after the accident. Plaintiff testified as to continuing pain and disability. Dr. McCullough expressed his opinion that "he has some permanent disability related to his left wrist and to his neck" and "Oh, I think they are permanent, point to permanent disability". We believe such evidence justified inclusion of the element of permanency in the submission to the jury.

Defendant asserts that the verdict for $7,500 is so excessive as to entitle him to either a new trial or a remittitur. The evidence as to injuries in Kiger v. Terminal Railroad, supra, which we briefly summarized in this opinion, is not greatly different from the evidence as to injuries in our case. There the appellate court required a remittitur of $10,000 on a $30,000 verdict and in the opinion (311 S.W.2d p. 15) quoted with approval from another opinion as follows:

" 'There is no precise method for determining the maximum award which the evidence in this case will support. Each case must be considered upon its own peculiar facts. Due regard should be given to the purchasing power of the dollar, to the rule of reasonable uniformity of awards for similar injuries and to the fact that the jury and the trial judge were in a better position than this court to measure an award of reasonable compensation, as well as to the fact that the trial court has approved the verdict in question.' Burr v. Kansas City Public Service Co., 365 Mo. 115, 276 S.W.2d 120, 127."

In Ciardullo v. Terminal Railroad Ass'n. of St. Louis and Graham Paper Co., Mo., 289 S.W.2d 96, 99, 100, the court said:

"Next for consideration is appellant Graham's contention that the verdict of $15,000 is excessive. The injuries suffered by the plaintiff are confined solely to the elbow of his left arm. His pecuniary damages consist of a wage loss of between $1,500 and $1,600. There were no medical or hospital expenses. Plaintiff returned to his work as a switchman for the Terminal at the same wage rate he earned before the accident, which was about $416 per month. At the time of trial he had been working for a period of about ten months, apparently without loss of time.

"Plaintiff testified that he had 'steady pain' in his elbow and that it usually gets worse after he has done work with the arm or has kept it in one position too long. He does not have any special training or education and has been a manual worker since he was 16 years of age. He was 30 years old at the time of the trial."

The appellate court there reduced a $15,000 judgment to $12,000.

In our particular case the judgment is for $7,500. The plaintiff is a young man—27 years old when the injury occurred—and is qualified only for physical labor. The amount of the judgment has had the approval of the trial judge. We are not willing to disturb it.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.