Glendola **HARRISON** and Armon Harrison,
Plaintiffs-Respondents,

v.

Andy **WELLER** and Sterling Aluminum Company, a corporation, Defendants-Appellants.

No. 8724.

Springfield Court of Appeals.

Missouri.

Dec. 22, 1967.

Manuel Drumm, Sikeston, for defendants-appellants.

McHaney & Welman, Kennett, for plaintiffs-respondents.

TITUS, Judge.

The occurrence which activated this damage suit transpired April 29, 1964, in Cardwell, Missouri, when a tractor-trailer unit driven and owned by defendants collided with a pick-up truck occupied by plaintiffs Armon and Glendola Harrison, husband and wife. Nearly three years later on April 12, 1967, a jury in the Circuit Court of Mississippi County awarded damages to Mrs. Harrison in the sum of $7,500 for her personal injuries. Her husband was allowed $4,000 for the cost of medicines and medical services furnished Mrs. Harrison and because of the alleged loss of his wife's consortium, services and association. This appeal, perfected by defendants when their after-trial motions came to naught, does not involve the issue of liability.

Mrs. Harrison, forty-four years of age at the time of collision, was never hos-

pitalized and Dr. English, the only treating physician, ministered unto her but six times on April 29, 30, May 4, 11, 23, and on June 29, 1964. Mrs. Harrison was dismissed from Dr. English's care on this last date and he did not again see her until the day before trial "in preparation for coming up here for this lawsuit." The total doctor bill, including "x-rays and everything," was $123 and the cost of medicines "was approximately $50, I guess."

The accident occurred near Dr. English's professional rooms and he examined Mrs. Harrison cursorily at the scene before taking her to his offices for a thorough inspection. The doctor said Mrs. Harrison was found to have unspecified injuries "to her neck" and left lung, a fracture of the seventh left rib, a cut to her middle right finger, pleurisy over the left chest, and multiple contusions and bruises over the chest, upper back, left shoulder, left hip and to the left side of her head. Twelve days after the accident Mrs. Harrison complained of dizziness "when she would lie down." The physician said this was "vertigo." Twenty-four days following the collision, Mrs. Harrison complained "of wanting to cry all the time [and] had a headache." X-rays were then made and revealed Mrs. Harrison "had two fractures of the eighth left rib and the fracture of the seventh left rib." On June 29, 1964, sixty days after the accident when Mrs. Harrison was finally dismissed from medical care, "she had no headache or dizzy spells" but said she "was very nervous." The doctor's handwritten record of this examination states: "No complaints. * * * No headaches or dizzy spells * * * still has crying spells at times but it is much better." Mrs. Harrison, on this date, according to the record, had no pain, soreness, tenderness or limitation of motion to any part of her body.

Mrs. Harrison told the jury she was home abed four or five days following the accident and wore an elastic rib bandage for three weeks. The next month she rested in the mornings and afternoons, did "cook-ing mostly, some washing" but no "cleaning house." Thereafter, she was "up" continuously during normal waking hours and by the time of trial had been performing all household duties for a considerable period. "Outside chores" in her gardens and "mowing the lawn" had been restricted and since the accident she had not helped her husband with his farming which previously consisted of assisting him "haul his beans to the elevator and I filled the drills for him and rode the drill, see that it was working right, and I have driven a tractor for him." Mrs. Harrison, according to plaintiffs, had intermittently experienced headaches, dizziness, nervousness and crying spells to the time of the hearing. Differing from the dizzy spells described to Dr. English while under his care, Mrs. Harrison testified she got dizzy "when I would look up" and that is why she required her daughter's assistance to "hang out the clothes." In explaining her "nervousness" Mrs. Harrison related "Be times I just want to cry * * * when I have one of those nervous spells I [usually] have a headache * * * maybe every month, maybe sometimes more than once a month." Asked if she had "any explanation as to why you have these crying spells," Mrs. Harrison answered "No, I don't."

■ What the examination of Mrs. Harrison by Dr. English on the day before trial consisted of was not asked or recorded. His recitation relative thereto was replete with history, matters in the past, and what Mrs. Harrison recounted to him concerning her past complaints and past conditions. Such testimony is within the hearsay rule (Schears v. Missouri Pacific Railroad Company, Mo. [banc], 355 S.W.2d 314, 317 [1] and 319) but was not objected to by defendants on that ground. For example, Dr. English said Mrs. Harrison had told him "if she takes the least bit of a cold her left ear hurts her. She has a dull aching pain up and down the left side of her neck if she does not take a pain medicine. She has spots before her eyes

and sometimes she cannot see out of the right eye." When inquiry was made of Dr. English as to "Mrs. Harrison's present condition," he replied "she has some injury to her brain * * * [and] some injury to her left ear." He equivocally explained what he meant "by that" in stating, "Well, at the time of this accident the left side of her face was bruised, and the dizziness that she had was injury to her nerves that go to the left ear * * * and to the center part of the brain." The testimony of the physician who examined Mrs. Harrison on behalf of the defendants was to the effect "I didn't find anything wrong with her on examination" except for "her story or residual complaints" and he "couldn't say" what the complaints of "headaches and the crying and the infrequent dizzy spells" were due to and could not relate them to "some injury she sustained in the accident."

Save the single inquiry if the "inflamátion of the lower lobe [of the lung, we assume] on the left side," diagnosed May 4, 1964, was "a direct result of the automobile accident," no question was propounded to Dr. English if, in his opinion, there existed any possibility, probability, chance, assurance, likelihood or reasonable medical certainty the accident could, might, would or did cause or produce Mrs. Harrison's injuries, complaints, or conditions as related in the testimony. No hypothetical question in any form was asked Dr. English. The doctor did testify no "permanent condition" resulted from the fractured ribs but he was never asked his opinion if any of the other injuries, complaints or conditions would result in any permanent or future pain, disability, discomfort or damage. The testimony of Dr. English was the only medical evidence offered by plaintiffs and the need of future medical treatment for Mrs. Harrison was never indicated.

Defendants contend the verdicts are excessive and the trial court erred in giving instructions 5 and 6 (MAI 4.01 Modified-Measure of Damages) because the evidence did not establish plaintiffs had sustained any permanent or future damages as a direct result of the accident and in permitting plaintiffs' counsel, over objection, to argue to the jury "specifically concerning [certain] injuries" when there was insufficient evidence to causally connect them to the collision. We shall consider the penultimate assignment first.

Instruction 6 only differed from Instruction 5 as we indicate by brackets, as follows:

"If you find the issues in favor of the plaintiff Glendola [Armon] Harrison on Count I [II] of the petition, then you must award the plaintiff Glendola [Armon] Harrison such sum as you believe will fairly and justly compensate the plaintiff Glendola [Armon] Harrison for any damages you believe she [he] sustained *and is reasonably certain to sustain in the future* as a direct result of the occurrence mentioned in the evidence [of the injuries to his wife, Glendola Harrison]." The italicized portion of the instructions (our addition) appears in brackets in MAI 4.01 with the admonition "This may be added if supported by the evidence." Missouri Approved Jury Instructions, p. 25. The Committee's Comment cautions that "During the instruction conference the parties and the Court should discuss (on the record) just what damages are supported by the evidence and can properly be argued to the jury. In this way jury arguments can proceed without interruption." The transcript indicates this advice was not followed.

■■■ The obvious deficiency in defendants' complaint with regard to there being no evidence of *permanent* damages to support the instructions, lies in the fact neither instruction employs the word "permanent" nor the phrases "permanent injury" or "permanent damages." Neither does MAI 4.01. While permanent injury may include future damage, the converse is not necessarily true. It has long been recognized "an injury may not be permanent and yet it may affect the health in the future; that is to say, for a period after

the trial, greater or less in length of time. * * * 'Permanent injury' and 'future injury' are not expressions of the same thing. * * * And so * * * said in Ballard v. Kansas City, 110 Mo.App. 391, 396, 86 S.W. 479, that there might not be a permanent injury and yet the jury allow for future pain." Wood v. Chicago, B. & Q. Ry. Co., 119 Mo.App. 78, 95 S.W. 946, 947. "There is a distinction between damages that will reasonably result in the future and permanent injuries." Stahlberg v. Brandes, Mo.App., 299 S.W. 836, 838(7); Heibel v. Robison, Mo.App., 316 S.W.2d 238, 242; Derschow v. St. Louis Public Service Co., 339 Mo. 63, 95 S.W.2d 1173, 1175(3); Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 61 S.W.2d 328, 334(6). There was no evidence any injuries or conditions complained of by Mrs. Harrison were permanent and such issue was not submitted to the jury by either instruction.

■ If it could be said the complaints of Mrs. Harrison at trial had persisted from the time of the accident and resulted from injuries she received in the collision, authority indicates the long continuance of conditions existing at the hearing of the cause is sufficient to warrant the giving of an instruction on future pain and suffering (Pettus v. Dubman, Mo.App., 389 S.W.2d 373, 377–378 [11]) and "makes a situation where it is for the jury to determine the probable duration of the injury." Palmer v. Lasswell, Mo.App., 267 S.W.2d 492, 497 (11). But such staples from justice's larder need be ingested with caution in this case for it does not necessarily follow from the fact (if it be a fact) Mrs. Harrison's "present condition" is reasonably certain to continue into the future that it is also reasonably certain such condition flows directly from the original injury *and* the accident of April 29, 1964. Zoeller v. Terminal Railroad Ass'n of St. Louis, Mo.App., 407 S.W.2d 73, 77–78(2); Clark v. Mississippi River & B. T. Ry., 324 Mo. 406, 23 S.W.2d 174, 179. The burden was on plaintiffs to show by substantial evidence a causal connection existed between defendants' negligence and all the injuries and damages for which recovery was sought. Immekus v. Quigg, Mo.App., 406 S.W.2d 298, 302(9) and cases cited; 65A C.J.S. Negligence § 244(1), pp. 722–723.

■ There are, of course, occasions where the facts and circumstances in evidence may reasonably permit an inference the occurrence was the proximate cause of injury, and instances where the causal connection between the tort and the disability does not need to be established by expert testimony because the disability develops coincidentally with the negligent act or the cause of injury relates to matters of which laymen have common knowledge and understanding. Fellows v. Farmer, Mo.App., 379 S.W.2d 842, 851(18); Bell v. S. S. Kresge Co., Mo.App., 129 S.W.2d 932, 935(4); 65A C.J.S. Negligence § 244(4), pp. 736–737. Defendants, as we understand it, do not strongly oppose the application of an inference the injuries to Mrs. Harrison's neck and lung, the broken ribs, and the bruises and contusions (all observed by Dr. English immediately following the accident and within a few days thereafter) were produced by the collision even though the doctor did not so directly testify. But if we indulge such an inference, we are bound to additionally infer that within sixty days of the casualty Mrs. Harrison had completely recovered from those injuries which appeared coincidentally, or nearly so, with the accident, for at that time she had "no complaints, no dizzy spells, no headaches" and no pain, tenderness, soreness or limitation of motion in any part of her body. We do not overlook Mrs. Harrison's complaint to Dr. English of nervousness which she told him twenty-four days after the accident manifested itself in crying spells. However, there can be little doubt a question involving causa causans of emotional disturbances is a complex one, peculiarly appropriate for science to answer, and a question which no jury should be permitted to resolve in the absence of expert testimony. Wilhelm v. State Traffic Safety

Commission, 230 Md. 91, 185 A.2d 715, 719. There was no medical opinion evidence which directly related the complaints of crying spells to either the collision or any injury Mrs. Harrison may have received in the accident, and the matter of causation was materially confounded by Mrs. Harrison's positive assertion she had no explanation as to why she had "these crying spells." Absolutely no effort was made to establish a relationship between the casualty and any injuries received by Mrs. Harrison to the complaints made to Dr. English three years after the accident that she had spots before her eyes, sometimes loss of vision in the right eye, aching in the neck unless she takes "a pain medicine," and hurting in the left ear if "she takes the least bit of a cold." The "injury to the nerves that go to the left ear * * * [and] to the center part of the brain" alluded to by Dr. English in explaining what he meant by saying Mrs. Harrison had "some injury to her brain * * * [and] left ear," was said to have caused "the dizziness that *she had.*" If we accept this as causally related to the accident, it may be evidence of the cause of vertigo Mrs. Harrison *had* but it is not satisfactory evidence of the cause of any claimed existing injury, disability or condition to be projected as future damages.

 It seems to us the cause, effect and probable duration of nerve injuries, vertigo, brain damage, emotional disturbances and loss of vision principally dependent for diagnosis on subjective complaints recounted almost three years subsequent to the casualty, present problems involving intricate medical inquiry, and that neither laymen nor courts are sufficiently informed or so commonly steeped in the science of such matters they can reasonably or to any degree of accuracy devine the etiology thereof without the aid and assistance of testimony from skilled and professional experts. The existence and perseverance of such complaints certainly might produce a serious suspicion in the lay mind there was a causal relationship between them and the accident and a likelihood they would last into the future and produce damage beyond the date of the hearing. But to allow a jury of laymen, unskilled in medical science, to attempt to answer questions concerning the origin, effect and duration of such conditions or injuries with no medical testimony on the subject, would permit the rankest kind of guesswork, speculation, and conjecture. James v. Sunshine Biscuits, Inc., Mo., 402 S.W.2d 364, 372–375(1–3) and cases cited; Watkins v. West, Mo.App., 297 S.W.2d 568, 572; Frisone v. United States, 9 Cir., 270 F.2d 401, 403; Uris v. State Compensation Department, Or., 427 P.2d 753, 755(1, 2); Larson v. State Industrial Accident Commission, 209 Or. (banc) 389, 307 P.2d 314, 318–319; United Ins. Co. v. McElwee, Okl., 258 P.2d 609, 610(2–3); Spivey v. Atteberry, 205 Okl. 493, 238 P.2d 814, 816(1–5), 27 A.L.R.2d 1259; Wilhelm v. State Traffic Safety Commission, supra, 185 A.2d at 719(4); Roy v. Robin, La.App., 173 So.2d 222, 224(4–5). Before a recovery may be allowed for future damages or future pain and suffering for the type of conditions complained of by Mrs. Harrison, there should be competent medical testimony which not only shows a causal relationship of such conditions to the accident, but which additionally makes it reasonably certain such conditions will protrude into the future. The unsupported subjective statements of the injured party are not sufficient and where, as here, there is no medical evidence relating either the cause or the duration of the complaints to the initial injuries or the casualty, it was error for the court to instruct on future damages. Zoeller v. Terminal Railroad Ass'n of St. Louis, supra, 407 S.W.2d at 77–78(2–4) and cases cited. Additionally we think it was error for the trial court to permit plaintiff's counsel, over objection, to argue concerning the specific injuries for which there was no substantial medical evidence concerning their cause and "we cannot say that the error was not prejudicial in view of defendant's serious

contention that the verdict[s were] excessive." Watkins v. West, supra, *297 S.W.2d* at 572(9); Holmes v. Terminal R. R. Ass'n of St. Louis, 363 Mo. 1178, 257 S.W.2d 922, 928–929(13); and authorities cited in both cases.

 Man places, and rightfully so, an inordinate and unique importance upon his head and the integrity of the functions of its auricles, orbs and encephalon. The size of the verdicts indicate the jury took cognizance of the testimony regarding brain damage, ear injury, loss of vision and emotional upsets, "and since such evidence must have considerably augmented the damages allowed, there is no basis for a remittitur." Bertram v. Wunning, Mo. App., 385 S.W.2d 803, 807(6).

For the reasons stated aforesaid and because defendants have made no claim the jury erred in its determination of liability (V.A.M.R. 83.13 [c], V.A.M.S. § 512.160, subd. 3), the judgment of the trial court as to both Count I and Count II of the petition is reversed and the cause remanded for a new trial on the issues of damages only.

HOGAN, P. J., STONE, J., and COTTEY, Special Judge, concur.