**Clyde E. LAW, Respondent,**

v.

**Albert TAYLOR and Mary Dorothy Taylor, Appellants.**

**No. 22923.**

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1959.

Walter R. James, Patrick Bills, James, McFarland & Trimble, North Kansas City, for appellants.

William B. Waters, Robert E. Coleberd, Liberty, for respondent.

SPERRY, Commissioner.

This is a suit by plaintiff, Law, against defendants Taylor (husband and wife) on an oral contract for the reasonable value of plaintiff's services in selling earth fill, or dirt, removed from land owned by defendants and sold to Missouri Pacific R. R. Co., which corporation was joined as a defendant. However, the Court sustained a motion for directed verdict in favor of Missouri Pacific. From a verdict and judgment for plaintiff in the amount of $4,050, defendants Taylor appeal.

Defendants owned some 35 acres of land located just north of the Chouteau Bridge, in Clay County. About two acres, triangular in shape, lay to the east and the bal-

ance to the west of the highway. The top of the east parcel was some 30 to 40 feet above the level of the roadway and was heavily wooded. Defendants were desirous of having this tract reduced to road level so that it would be suitable as a filling station site. A large part of the west tract was also higher than road level and was covered by brush and other vegetation.

Plaintiff was a contractor, engaged in excavation and in selling dirt for fills. He owned equipment suitable for such work and had previously had some business dealings with Mr. Taylor.

Plaintiff's testimony was to the effect: that, in October 1955, he needed dirt for fills in connection with his own contracts and also had opportunities to sell dirt to other contractors; that he and defendant orally agreed that plaintiff should take dirt, as needed, from the east tract; that it required skill to remove the brush and the dirt from this particular tract; that he agreed to eventually reduce the tract to road level; that he was to pay nothing for the dirt. Defendants agree that such a verbal agreement was made. Plaintiff removed all of said dirt excepting about 4,000 yards. This tract is not involved in this appeal.

Plaintiff also testified to the effect that he and Mr. Taylor further agreed that, after plaintiff had reduced the east tract, he was to move to the west tract; that he was to assist in the sale of, and supervise the removal of dirt from that tract, on a "sharecrop arrangement;" that he was to receive a portion of the proceeds from the sale of dirt in return for his "management and whatever was necessary to do;" that he was to find buyers for the dirt, see that the property was kept in order, and manage the way the dirt was taken out; that the agreement was not reduced to writing; that, as removals were made from the east tract, plaintiff would inform defendant thereof; that, after about a year, all except a few thousand yards had been removed from the east tract; that it was 90

per cent complete in reduction to road level.

He stated that, early in 1956, he wished to submit a bid on a Kansas City Power and Light Co. project involving 250,000 yards of dirt; that there was not sufficient dirt left on the east tract; that he talked to Mr. Taylor and it was agreed that he could sell the dirt from the west tract for ten cents per yard, retaining three cents for himself; that this sale did not materialize; that, in July or August, 1956, he learned that Missouri Pacific R. R. Co. wanted dirt for a hump yard; that he told Mr. Taylor of it, informing him that a large amount of dirt would be required; that a million yards were available at that time, on the west tract; that he and Taylor agreed to ask five cents per yard; that, pursuant to this agreement, plaintiff talked to Mr. Tracy, representing the Missouri Pacific, and was told that about 500,000 yards would be required; that Tracy said that they hoped to buy at three cents; that he and Tracy drove to the tract in question and looked it over; that Tracy said it looked all right but that he wanted it for less money; that he told Taylor the results of his conference with Tracy, that same day; that they agreed to ask four cents per yard, "as is" or four and one half cents cleared of vegetation; that plaintiff told Taylor that he would submit that proposition, which he did; that Tracy called plaintiff and asked him to meet Tracy and Mr. Prince, the Division Engineer, on the acreage; that he and Taylor met Tracy and Mr. Prince; that they discussed the price, quantity required, method of measurement, and the method and time of removal; that the company wanted an option, which was agreed upon; that an option, executed by Missouri Pacific, was later signed by plaintiff and the Taylors, in Taylor's office; that plaintiff, later, received a copy of it.

That instrument was in evidence. It bore the signatures of plaintiff, defendants, and the Missouri Pacific. It provided for a

price of four cents per yard, the company to remove the dirt. Plaintiff was referred to therein as a lessee of the land, but he signed it as an owner, as did the Taylors.

His testimony was to the further effect that a $500 check, payable to plaintiff and to defendants, was attached to the option contract; that he indorsed the check but received none of the proceeds; that, later, Mr. Taylor told him that the contract for the sale of dirt had been received by him; that plaintiff went to Taylor's office and they read and discussed the proposed contract; that the contracting parties named therein were plaintiff, defendants and Missouri Pacific; that plaintiff and Taylor rejected the contract for the reason that it provided a period of four years for performance; that, later, plaintiff, Taylor, Prince and Tracy met in Taylor's office to discuss the terms of a new contract; that a period of one year was agreed on for performance; that Prince asked Taylor if the same parties were to be named in the second draft and Taylor said "yes"; that a second contract was drawn by the company; that it named the same parties as did the first; that Taylor asked plaintiff to come to his office, where they discussed the contract. A copy of said instrument was in evidence. It had been signed by Missouri Pacific and by plaintiff, but not by the Taylors. Plaintiff stated that he signed it in Taylor's office.

Mr. Tracy testified to the same general effect as did plaintiff regarding his part in the negotiations between the respective parties leading up to the execution of a contract for the purchase of dirt. He stated that, when the first draft was rejected, nothing was said by Taylor regarding plaintiff being a party and that, when witness delivered the second draft to him, Taylor examined it and made no complaint or objection that plaintiff was a party named therein; that, a few days later, Taylor called witness and refused to execute the contract because plaintiff had no interest in the dirt; that that was the first time Taylor registered such an objection.

Mr. Prince stated that he came to Kansas City from St. Louis and, together with Mr. Tracy, conferred with plaintiff and defendants, at the acreage, before the option was executed; that Missouri Pacific prepared a draft of a contract (the first) for its purchase of dirt, but that Mr. Taylor rejected it for the stated reasons that it provided a four year time limit for compliance by the company, and that he did not like the method of payment; that Taylor and plaintiff were both present; that Taylor did not object to plaintiff's being named in the contract as a party; that witness caused to be prepared a second draft of the contract; that he did not suggest to the draughtsmen the dropping of plaintiff's name therefrom.

It is agreed that Missouri Pacific paid the Taylors for 405,000 cubic yards of dirt purchased and received under this contract, at a price of four cents per yard. There was also testimony from a dirt contractor to the effect that one cent per yard was the reasonable value of plaintiff's services. Mr. Taylor's testimony was, generally corroborative of plaintiff's as to their dealings and conversations, except that he insisted that he did not expect plaintiff to receive anything from sales of dirt from the west tract other than such as he might be paid by the vendee for excavation and delivery. He stated that he did not agree that plaintiff should be paid anything from what Taylor received for the dirt at the site, but that he did not object to his being named as a party in the option, and in the first two drafts of the contracts, because plaintiff asked him not to object; that plaintiff said that, as a result of his being mentioned in the contract, he would stand a better chance to get his machinery employed in delivering the dirt.

■ We have set out the evidence rather laboriously because defendants urge that the Court erred in overruling their motion for directed verdict and their after-trial action for judgment. Of course, in ruling whether plaintiff made a submissible case, we will consider all of the evidence from

a standpoint most favorable to plaintiff, who was the prevailing party below.

■ Defendants contend that the evidence shows that any oral agreement the parties may have originally made in October 1955, was merged in a written contract between them as of January 23, 1956. That contract, prepared by Taylor and signed by him and plaintiff, was in evidence. It provides that Taylor "agrees to let" plaintiff remove, free of charge, the dirt from the east tract down to road level. "Also to sell him the balance of dirt needed to fulfill a contract bid that is pending at present time for about 70,000 yards of dirt at seven cents per yard." Mr. Taylor explained and stated that, at that time, plaintiff and one Oldham had a contract to deliver 70,000 yards of dirt to the Burlington; that only 30,000 yards remained on the east tract and plaintiff wanted to get the balance from the west tract. Plaintiff denied any interest in Oldham's contract other than to supply him dirt.

However, it is clear, both from a reading of the contract and from Mr. Taylor's testimony, that this instrument, defendants Exhibit A–1, related only to a certain specific undertaking, then pending; and no dirt was ever taken from the west tract prior to that taken by Missouri Pacific. Under the circumstances shown, and from the contract itself, it is clear that this instrument was not intended to be effective except in relation to the Oldham undertaking and was not intended to be binding as to other future transactions between the parties.

Defendants next contend that no oral contract between the parties was ever made because plaintiff stated in evidence that no definite and final agreement was ever reached as to what amount plaintiff should receive for his services. They cite Brown v. Childers, Mo.App., 254 S.W.2d 275, 281, where we held that there can be no contract so long as the essential terms thereof are reserved for the future determination of both parties. That language is appropriate in the circumstances of that case; but it is not applicable as a bar to plaintiff's right to recover in the instant case.

■ Here, according to plaintiff's unequivocal testimony, the parties agreed that plaintiff, who was experienced in the preparation, excavation, delivery, measurement and sale of dirt for fill purposes, should receive reasonable compensation for his services in connection with the sale of dirt from defendant's west tract. That was the agreement made, if plaintiff's testimony, together with all of the facts and circumstances in the case, are considered and viewed from the standpoint most favorable to plaintiff's theory of recovery.

■ This agreement has been fully executed on plaintiff's part. All that remains to be done is for defendants to compensate him for his services. In Brunner v. Stix, Baer & Fuller Co., 352 Mo. 1225, 181 S.W.2d 643, 645, the Court said: "True, contracts should be definite and certain and generally a definite price or compensation is an essential element of a binding contract. But the rule with respect to contracts executed except for payment is that there arises an implied promise to make reasonable payment." See, also, 58 Am. Jur., Section 39, Pages 542 and 543; Swift v. Johnson, 175 Mo.App. 660, 666–667, 158 S.W. 96.

■ Defendants also urge that plaintiff cannot recover because he seeks recovery for services rendered in the sale of real estate but failed to allege or prove that he is a licensed real estate broker or salesman. He cites and relies on Section 339.-160, V.A.M.S.

This Chapter does not apply to plaintiff or to the transaction here involved. Plaintiff did not sell or offer to sell title or an interest in real property. He did not advertise or hold himself out to the public as a real estate broker or dealer. Subpar. 3, Section 339.010 RSMo 1949, V.A.M.S.

The only other point presented by defendants is that plaintiff's main instruction was not supported by substantial evidence. The point is without merit.

The judgment should be affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.