Bert PRYOR and Inez Pryor, Plaintiffs-Respondents,

v.

AMERICAN OIL COMPANY, Defendant-Appellant.

No. 25559.

Kansas City Court of Appeals, Missouri.

June 7, 1971.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1971.

Errol D. Taylor, Smith, Utz, Litvak & Thackery, St. Joseph, for defendant-appellant.

Edward D. Speiser, Miner, Martin & Speiser, St. Joseph, for plaintiffs-respondents.

DIXON, Commissioner.

Trial of this damage suit in the court below resulted in a verdict for the plaintiffs in the amount of $13,000 on plaintiff-husband's count for personal injuries and in favor of plaintiff-wife on her derivative action in the amount of $100. No issue of liability is raised in connection with this appeal. The husband, a 53-year-old carpenter, hereafter referred to as plaintiff, was operating a motor vehicle westbound on 36 Highway near 11th Street in St. Joseph, Missouri on the 9th of January, 1969. Plaintiff came to a complete stop because of traffic ahead of him and activated the automatic flashers. A large truck operated by the defendant's agent and servant struck another vehicle which was propelled against the plaintiff's vehicle from the rear. The plaintiff's vehicle travelled 75 feet after impact, and his station wagon was telescoped in the middle, and the back seat was knocked into the front seat pinning him to the steering wheel. The plaintiff was removed by ambulance to a hospital where he was advised that he was having urinary trouble and he was passing blood. He was catheterized, and the urination problem has continued to date. His glasses were thrown to the back of the car, and he had pain in his lower abdomen, bruises on his arms, and contusions over his body. He remained in the hospital for 21 days, and he was treated with heat treatments and drugs. The record discloses that the plaintiff had never been treated for nor complained of any urinary condition prior to January 9. Plaintiff did not return to work until April 14, 1969, and he testified that at the time of trial he was having continued difficulty with urination, having to void every hour. He further testified that he got up anywhere from four to twelve times a night because of his urinary difficulty and continued to have a dull ache in his back. He claims to have

continued to have blood in his urine to the date of trial.

Plaintiff's medical evidence was by his family physician who had treated him since 1962. Plaintiff's history of January 9, 1969, was in evidence which showed that he had pain in his back, low and high, and after admission, developed dysuria, or painful urination. The examination showed that he had muscle spasms in his low back, pain on motion in his low back, and the next day began to have frequency and dysuria. His injuries were diagnosed as contusions, strain to back, mid-low, accidentally sustained in a whiplash type of trauma. He was found to be suffering from hypertrophic arthritis, urinary cystitis and prostatitis, cause undetermined, "possibly due to hypertrophy" and "possibly due to trauma." The doctor further testified that the back and the aggravation of arthritis he found were caused by the accident. He testified that he had no way of telling if the residual symptoms were permanent or not. He further stated that he had never treated the plaintiff for any urinary problem and that the frequency of urination, dysuria and pain could have resulted from the accident. The defendant did not offer a witness on the medical side of the case, but relied upon a report of a doctor who examined on behalf of the defendant. It had been agreed by counsel defendant might offer this report in lieu of the doctor's testimony. Aside from the history given by the plaintiff, which will be adverted to later in connection with another point, the doctor's report showed that plaintiff had benign prostatic hyperplasia producing dysuria, urgency and frequency and impaired urinary flow which that doctor felt to be caused entirely by the prostate enlargement.

■ At plaintiffs' request, the court gave a damage instruction based upon MAI 4.01. This instruction included the bracketed portion of MAI 4.01 relating to future damages. There is a variance from the MAI form by the insertion of the plaintiff-husband's name and the pronoun "him",

but no question is raised on this appeal concerning this departure from MAI. The transcript does not show that Rule 70.01 (d), Missouri Rules of Civil Procedure, V.A.M.R., was followed since none of the instructions which appear in the transcript contain the record required by that subsection of the party who tendered them and the MAI number and notation of modification where appropriate. Defendant's complaint with respect to the damage instruction in its original brief was that this instruction was improper as authorizing the jury to compensate the plaintiff for future damages. Cases are cited which deal with the problem of insufficient medical evidence to show causation. Plaintiffs countered in their brief by arguing that defendant's motion for a new trial did not raise the issue of causation. In its reply brief, Defendant admits, in effect, that the issue of causation of the injuries is not adequately raised, and that the issue which we must determine is whether the evidence supports a submission to the jury which permitted them to find plaintiff sustained "future pain and suffering." The transcript does not reveal whether the parties followed the admonition in the committee's comment under MAI 4.01 to delineate the damages on the record prior to the argument, and we can only assume that no argument was made concerning the permanency of plaintiff's injuries. This inference is strengthened by reason of the fact that the trial court excluded the life expectancy of the plaintiff on the theory that no evidence of permanent injury had been offered.

Defendant relies upon the opinion in Harrison v. Weller, Mo.App., 423 S.W.2d 226, as supporting its position that no evidence in this record supports the submission of future damage, and excerpted in its brief is the following quotation:

" 'Before a recovery may be allowed for future damages or *future pain and suffering* for the type of conditions complained of by Mrs. Harrison, there should be *competent medical testimony* which not only shows a causal relationship of

such conditions to the accident, but which additionally *makes it reasonably certain such conditions will protrude into the future.*' (loc. cit. 231; Emphasis added)"

What is not emphasized is that portion of the court's opinion in Harrison v. Weller which says:

" * * * no question was propounded to Dr. English if, in his opinion, there existed any possibility, probability, chance, assurance, likelihood or reasonable medical certainty the accident could, might, would or did cause or produce Mrs. Harrison's injuries, complaints, or conditions as related in the testimony. No hypothetical question in any form was asked Dr. English. The doctor did testify no 'permanent condition' resulted from the fractured ribs but he was never asked his opinion if any of the other injuries, complaints or conditions would result in any permanent or future pain, disability, discomfort or damage. The testimony of Dr. English was the only medical evidence offered by plaintiffs and the need of future medical treatment for Mrs. Harrison was never indicated."

It is apparent from an examination of this last cited portion of the opinion in Harrison v. Weller that it is not applicable to the facts of this case. Here plaintiff offered evidence by his doctor that the injuries sustained, contusions, strain of low back and aggravation of hypertrophic arthritis were *caused* by the accident in question and that the frequency of urination and pain *"could"* have resulted from the accident. The record likewise supports a finding that plaintiff had muscle spasm and pain in his back immediately following the collision. He still has a dull ache in his back, both by his statement and by his treating physician's statement that he had objective symptoms of pain at the time of the doctor's last examination on March 2, 1969, approximately two months before trial.

■ Such evidence supports a submission of future damages, and we rule against

defendant's contention that such a submission is without evidentiary support. Plaintiffs are entitled to that view of the evidence most favorable to the verdict and the ruling of the trial court on the motion for new trial when determining the question of submissibility. (Steva v. Steva, Mo., 332 S.W.2d 924; Law v. Taylor, Mo.App., 330 S.W.2d 170.) Considering this evidence in the light of that rule, we believe no error is shown in the submission of future pain and suffering. Pettus v. Dubman, Mo.App., 389 S.W.2d 373, 378.

■ Defendant also urges that we should reverse the judgment in this case on the basis of an incident occurring in the argument. Defendant contends that plaintiff's counsel stated in argument that "Dr. Stockwell testified that respondent's symptoms of need for frequency of urination did not exist prior to the date of the accident." Only that portion of the argument relating to this incident is contained in the transcript. A portion of this is as follows:

"First of all, this condition did not exist prior to this accident. We have that testimony of Mr. Pryor. We have it from his wife. We have it from Dr. Rost who is his treating physician. Then it is also in Dr. Stockwell's report, if you remember—

MR. UTZ: We object to that.

THE COURT: The jury will remember what was in Dr. Stockwell's report and disregard anything that wasn't in it. Proceed, Mr. Speiser.

MR. SPEISER (continuing): Dr. Stockwell's report states that 'at your request to investigate the problem of frequent urinary voiding, sense of discomfort and nocturia (voiding at night) frequently. Symptoms date from the time of an automobile accident he claims to be involved in January 9, 1969.'

MR. UTZ: And that, your honor, is the statement of the plaintiff and not Dr. Stockwell."

After this exchange, defendant's counsel approached the bench and out of the hearing of the jury contended that plaintiffs' statement was a misstatement of what the report said. The report is in the transcript since it was offered in evidence by the defendant. The transcript of the argument demonstrates it was quoted accurately. The effect of defendant's argument is that it is complaining of the plaintiff's reading again to the jury what the defendant read to the jury as a part of its evidence. It argues the language, "Then it is also in Dr. Stockwell's report, if you remember—," created an inference that Dr. Stockwell made some finding to this effect. The jury heard the entire report, and the first sentence of the report demonstrates the doctor was reciting plaintiff's symptoms. The comment of defendant's counsel that this was the plaintiff's statement and not that of the doctor also makes the authorship of the statement apparent. It is difficult to see how the jury could have been misled as to the fact that this was the statement given by the plaintiff to Dr. Stockwell, and not a finding by Dr. Stockwell. This argument simply does not imply any such prejudicial effect as defendant contends. We affirm the action of the trial court who heard and considered this contention. The trial court had the advantage of seeing the action live, and we will not disturb his ruling unless the prejudicial effect is apparent. Nelson v. O'Leary, Mo., 291 S.W.2d 142, 143. Douglas v. Twenter, 364 Mo. 71, 259 S.W.2d 353, 363.

■ The last point briefed by defendant is based on the third paragraph of its motion for new trial, the pertinent parts of which are as follows: " * * * the verdict * * * returned by the jury was excessive and clearly shows bias and prejudice against defendant as a result of the above submissions of error."

Defendant has *briefed* this question as if its assignment of error was that the size of the verdict alone shows bias and prejudice against the defendant. It does not in its brief or argument contend that other error

caused an excessive verdict or bias and prejudice against the defendant which resulted in a larger verdict.

Defendant argues that there is no evidence of injury other than what it calls "back injury and aggravated arthritis." This argument is premised upon the main argument advanced here that the urinary difficulties were not "caused" by the collision in evidence. We have already ruled that the assignments of defendant with respect to the submission of future damages or prejudicial argument are not well taken. No error upon which to predicate a claim of bias and prejudice having been shown, we have only a claim of "excessive verdict."

If we read defendant's assignment of error as a claim that the verdict is so large as to demonstrate bias and prejudice, we are confronted with the proposition that we may not infer bias and prejudice from the size of the verdict alone. Nussbaum v. Kansas City Stock Yards Co. of Maine, Mo., 359 S.W.2d 335; Dye v. St. Louis-San Francisco Ry. Co., 361 Mo. 331, 234 S.W.2d 532; Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S.W.2d 157, 159. Nor does the assignment, if read in this fashion, raise the question of simple excessiveness requiring remittitur. Skadal v. Brown, Mo., 351 S.W.2d 684, 689. Thus, the only basis upon which we could sustain defendant's contention with respect to excessiveness of the verdict would be upon the basis of argument contained in its brief and, we believe, not sustained by its assignment of error. This argument, briefly stated, is that in determining the excessiveness of the verdict, we should ignore the question of the evidence of urinary difficulties of the plaintiff and, upon the basis of the remaining evidence, find that the verdict is so excessive as to come within the doctrine of cases which hold when a verdict is extremely excessive and not supported by the evidence, the only reasonable hypothesis is prejudice or wilful disregard of instructions. Wolfe v. Harms, Mo., 413 S.W.2d 204.

The difficulty with this theory advanced by defendant in its brief is that the issue of causation was not raised in the motion for a new trial, nor did defendant seek to withdraw from the jury's consideration the evidence concerning the urinary difficulties. Defendant did not object to the evidence in the record as to the pain and suffering of plaintiff arising from the urinary problem. The jury undoubtedly may have considered such evidence in determining the verdict in this case. No one disputed the fact that plaintiff was suffering from urinary frequency and painful urination and that this condition could and did cause pain and suffering. If this evidence is considered, the verdict of $13,000 is not so excessive and without basis as to justify reversal under the doctrine of Wolfe v. Harms, supra. If this evidence be considered as we believe it must be in assessing the size of the verdict, the injuries are comparable to those in Bone v. General Motors Corporation, Mo., 322 S.W.2d 916, which eleven years ago held that an amount of $17,500 was not excessive. The verdict and judgment of the trial court is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of DIXON, C., is adopted as the opinion of the Court.

All concur.