Roger Dale CHAUSSARD and Judy A. Chaussard, Respondents,

v.

The KANSAS CITY SOUTHERN RAILWAY COMPANY, a corporation, Appellant.

No. 26862.

Missouri Court of Appeals, Kansas City District.

March 29, 1976.

Motion for Rehearing and/or Transfer Denied May 3, 1976.

Application to Transfer Denied June 14, 1976.

5. This case was tried January 22, 1974, prior to the amendments of § 195.200 by Laws of Mo.1975, p. ——, H.B.No.150 sec. 1.

Robert D. Youle, William C. Hopkins II, Kansas City (Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, of counsel), for appellant.

Michael J. Albano, Graham, Paden, Welch, Martin & Tittle, Independence, for respondents.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

HIGGINS, Special Judge.

Appeal from verdicts and judgments of $100,000 for Roger Chaussard for personal injuries and of $25,000 for Judy Chaussard for loss of consortium. The questions are whether the court erred: in admitting Roger's testimony and plaintiffs' exhibits on his future wage loss; in excluding defendant's exhibits on Roger's prospects for future gainful employment; in admitting testimo-ny and an exhibit showing medical and hospital bills paid by Roger's employer for his medical care; and in giving Instructions 7 and 8 on plaintiffs' damages. Affirmed.

Appellant "make[s] no point upon this appeal that plaintiffs failed to make a submissible case."

The injury occurred January 7, 1971, at about 10:15 p. m., when Roger Dale Chaussard, operating a fork lift or tow-motor power vehicle, was upon and unloading logs from a railroad flatcar spotted at the roofing plant of his employer, GAF Corporation. Kansas City Southern Railway was then engaged in switching at the GAF plant, and was shoving several cars in front of an engine toward the dead end of the siding track. The flatcar upon which Roger was working was located with its north end about six feet from the bumping post at the end of the siding. Several coupled cars were to the south of the flatcar, and another car was situated to the south of them. This separate car was empty and waiting to be pulled. The string of cars coupled to the engine was shoved against it; the intended coupling failed, and the car rolled to the north and bumped the coupled cars. The flatcar upon which Roger was working was moved between three and fifteen feet according to various estimates. Roger had just placed his fork lift under a load of wood. He flew back against the seat on impact. The flatcar was driven forward into the stopper post and he hit his head on the hoist of his fork lift. The latter action drove the flatcar back again. Roger climbed down from the fork lift and leaned against a bale of paper to avoid falling. When able, he walked to the office and reported the accident. He then left the plant and drove to the Independence Sanitarium and Hospital, stopping once on the way due to pain and illness.

On October 29, 1964, Roger was injured in an explosion of a tar vat at GAF which caused severe burns over much of his head, neck, shoulders, and arms. At the time of injury he also fell a distance of six feet from a ladder or platform. He was hospi-

talized from time to time during the next five months for treatment of his burns. He suffered also from a severe and chronic back sprain. He was off work for a year, and was rated by Dr. H. B. Overesch to have fifteen per cent permanent disability of the body as a whole. He continued to have discomfort in his back if he worked two consecutive shifts.

On May 15, 1967, Roger was in an automobile accident and suffered a ruptured disc at L4–5 (right) for which he was operated. He was hospitalized from June 26 to July 11, 1967, was off work for four months, and missed some work during the following year. After returning to work he continued to have some back pain but became progressively better.

In April, 1968, Roger received an injury at GAF which resulted in a back sprain and stiff and aching right leg. He did not lose much work time from this injury but wore a back support and shoe lift temporarily.

About November 29, 1970, Roger took a fall from a motorcycle after which he suffered from headaches for which he was hospitalized from December 8 to December 15, 1970. He was then off work for two weeks and, upon his return to work, experienced no physical problems as a result of the fall.

From some time in 1969 until the accident of January 7, 1971, Roger performed heavy physical labor, missed no work due to back problems, and was relatively pain free.

Following the occurrence of January 7, 1971, Roger was examined at the Independence Sanitarium and was given medication for pain. He was hospitalized at St. Joseph's Hospital from January 9 through January 23, 1971. He was again hospitalized from February 17 through February 27, 1971, with diagnosis of and operation for disc extrusion at L4–5 (left). He had a normal recovery. Due to financial pressures he returned to work in June, 1971, and performed a job which was not heavy work as he had done previously. He was unable to perform some duties, could not accept overtime, and changed to a less strenuous job. His back continued to bother him.

On November 22, 1971, at GAF, Roger lifted a butane tank and felt sudden back pain. He was hospitalized at St. Joseph's Hospital from November 23 through December 10, 1971, from January 16 through January 20, 1972, and from February 15 through February 26, 1972. On December 2, 1971, he had a third disc operation at L4–5, including a spinal fusion at that site. He progressed well for several weeks, after which there were persistent medical problems and complaints; body jackets were applied on two occasions. He continued to time of trial with complaints, including constant pain for which drugs were taken to the extent of addiction. He did not return to work at GAF.

Dr. Campbell C. McCullough, Jr., an orthopedic specialist, performed the three operations on Roger's back at L4–5. In his opinion, Roger's injuries from the January 7, 1971, KCS switching operation contributed to cause the injury of November 22, 1971, and the problems subsequent to that injury; the November, 1971, injury was "the straw that broke the camel's back." Dr. Arnold Schoolman, a neurosurgeon who examined and tested Roger following his January, 1971, injury, expressed the same opinion, and both doctors were of the opinion that Roger was totally and permanently disabled from heavy, physical work.

Roger had an interest in motorcycles, hunting, and fishing. Since his injuries, he has ridden on but one occasion in the block near his home. He has gone hunting rarely and has found it necessary to limit his walking. He has tried bicycle riding and swimming as prescribed therapy during which he continues to experience pain.

Judy Chaussard described her husband's back problems, saying he could no longer lift a sack of groceries, move furniture, or mow the lawn. These limitations were confirmed by two neighbors.

Henry Smith, personnel director at GAF, testified to Roger's work, earnings, and loss

of time from the January accident, and identified Exhibits P–32 and P–34, payroll records showing such matters. He also identified P–31 as a file of bills for hospital care and doctors' services for Roger from January, 1971, forward, which, according to Ann Trantham, totaled $7,887.17. Such testimony and Exhibit P–31 were received over defendant's objection.

Roger Dale Chaussard testified to his loss of earnings and identified Exhibits P–23 and P–24 which illustrated his future wage loss calculation as a result of the accident of $264,914.40. Such testimony and Exhibits P–23 and P–24 were received over defendant's objection.

Roger had an interest in learning a home entertainment system trade. He completed half of a 52-week course in 1969 and 1970 at the Electronics Institute. He attended the same trade school from October, 1972, to time of trial, and would graduate in July, 1973, if he completed the course. His grades ranged from A's to C's. He knew the school had placed some of its graduates, but was not at all confident he could find a job in this trade. Glenn Farmer of the Institute testified to Roger's former and current stint as a student at the Institute. He identified Exhibits D–20 and D–21, records of the Institute, and offered in connection with them to testify with respect to Roger's prospects for employment in the field of electronics. Such testimony and exhibits were refused upon plaintiffs' objection that the exhibits were immaterial and irrelevant and that the testimony was speculative.

Dr. William Medlicott, an orthopedic surgeon, examined Roger on behalf of defendant, gave his findings, and expressed his opinion that Roger could return to his work at GAF.

Plaintiffs' damages were submitted by:
"INSTRUCTION NO. 7:

"If you find the issues in favor of plaintiff, Roger Chaussard, then you must award the plaintiff such sum as you believe will fairly and justly compensate such plaintiff for any damages you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence of January 7, 1971, and such damages as you believe he sustained in the occurrence of November 22, 1971, if you believe such injuries were either caused or contributed to by the injuries sustained in the occurrence of January 7, 1971."

"INSTRUCTION NO. 8:

"If you find the issues in favor of plaintiff, Judy Chaussard, then you must award her such sum as you believe will fairly and justly compensate her for any damages you believe she sustained as a direct result of the injuries sustained by Roger Chaussard in the occurrence of January 7, 1971, and such damage as you believe she will sustain for the injuries to plaintiff Roger Chaussard in the occurrence of November 22, 1971, if you believe such injuries were either caused or contributed to by the injuries sustained in the occurrence of January 7, 1971."

Appellant contends (IA) that the court erred in admitting Roger's testimony and Exhibits P–23 and P–24 on his gross future wage loss of $264,914.90, resulting from multiplying his average net earnings for the three years prior to the accident of January 7, 1971, by 39 years, the difference between his age, 26, and GAF's mandatory retirement age of 65. Appellant argues (1) that such evidence was necessarily predicated upon total permanent disability which is contrary to the evidence, asserting (a) that the medical and other evidence does not support complete and permanent disability, and (b) that the evidence proves plaintiff was near completion of training for an occupation in which he could physically engage. Appellant asserts (2) that such evidence was erroneous and prejudicial in that it was not reduced to present value and did not take into account the earning power of money as a basis for determining compensation damages, asserting (a) that under Missouri law only compensatory damages directly and proximately resulting from an

injury are to be awarded, (b) that earning power of money must be considered so a future wage loss claim must be reduced to present value, (c) that prior to MAI, defendant would have been entitled to a limiting "present value" instruction on damages, and (d) that under MAI, evidence to be admissible must reflect present value of claimed future wage loss.

■ Although Dr. Medlicott's opinion was to the contrary, the opinions of Drs. Schoolman and McCullough furnished evidence that Roger Dale Chaussard was totally and permanently disabled from engaging in the future in his work at GAF. Evidence showing his engagement in bicycle riding, swimming, and walking showed also that he did so with difficulty and as therapy pursuant to his doctors' instructions. The evidence shows also that he is not able to perform normal activities around his home and has been in continual pain to the extent of addiction to the drugs he takes to relieve his pain. Such evidence justified inclusion of the element of permanency of the injuries to plaintiff as a foundation for the receipt of plaintiff's evidence of his future wage loss. *Settell v. Horgan,* 362 S.W.2d 769 (Mo.App.1962).

■ Nor does Roger's attendance at the Electronics Institute show him to be employable in such a trade. His schooling had not yet been completed and it had not produced any confidence in him that he could become gainfully employed in electronics. The evidence shows him to be disabled for any job requiring lifting or cramped positions, and defendant failed to show any evidence of his physical ability to engage in electronics repairing.

■ It is true as appellant asserts (I2a) that only compensatory damages can be awarded in Missouri. Reference to Instructions 7 and 8 shows that the jury was instructed according to this proposition in that the jury was to award "such sum as you believe will fairly and justly compensate such plaintiff * * * as a direct result of the occurrence of January 7, 1971," as prescribed by MAI 4.01.

■ It is not necessary to deal with appellant's thesis in (I2bd) that Roger had some duty by computation, instruction, or otherwise, to reduce his future wage loss claim to present value and failed to do so, see e. g., *Coffman v. St. Louis-San Francisco Ry. Co.,* 378 S.W.2d 583 (Mo.1964), other than to observe that the jury in its wisdom took care of any such problem in this case when it determined Roger's damages in a sum unrelated to his future wage loss calculations. See discussion in *Beaulieu v. Elliott,* 434 P.2d 665 (Alaska 1967).

■ In answer to appellant's argument (I2c), suffice to say that if its authorities, *Moran v. Atchison, T. & S. F. Ry. Co.,* 330 Mo. 278, 48 S.W.2d 881 (banc 1932), and *Beanland v. Chicago, Rock Island & Pacific R. Co.,* 480 F.2d 109 (8 Cir. 1973), entitled it to a limiting "present value" instruction, error, if any, was appellant's own in its failure to draft and request such an instruction. 2 MAI LXII; *Turner v. Cowart,* 450 S.W.2d 441 (Mo.1969); *Moran v. Atchison, T. & S. F. Ry. Co.,* supra.

Appellant contends (IB) that the court erred in excluding Exhibits D–20 and D–21 and evidence by Mr. Farmer proffered to show that Roger Dale Chaussard would shortly complete a trade school for an occupation in which he physically could and intended to engage, and the prospects of his employment and earnings in such occupation.

Appellant argues that Exhibits D–20 and D–21 were relevant to show Roger's excellent grades and reason for interruption of school at the Electronics Institute as of February 20, 1970, and that testimony offered through Mr. Farmer was proper as against an objection it was speculative on whether Roger could obtain employment in electronics if he completed his course.

Exhibit D–20 showed Roger's attendance at the Electronics Institute from September 12, 1969, through March 15, 1970, in a course differing from the course he was taking at time of trial, together with his lesson grades which ranged from A plus to

C minus and two examination grades of C minus. Exhibit D–31 was an "interruption Check-off Sheet" of the Electronics Institute, dated March 20, 1970, showing Roger's last date in attendance as February 20, 1970, and the reasons for interruption as "back trouble" and "financial."

■ Such information was not relevant to the occurrence and injury of January 7, 1971, which precipitated this trial, and it was remote from any indication of employability. Its exclusion was within the discretion accorded the court in receipt of evidence. *Bine v. Sterling Drug, Inc.,* 422 S.W.2d 623, 631 (Mo.1968).

Such information was also cumulative because the jury had been apprised of Roger's record of good grades at the institute and his prior back problems. In such situation, error, if any, in exclusion of the information, was harmless. *Potter v. Milbank Mfg. Co.,* 489 S.W.2d 197, 206 (Mo.1972).

The excluded testimony of Mr. Farmer, as described by appellant, included: many of the school's students were physically handicapped and came from Vocational Rehabilitation; about 95% of its graduates found employment with average earnings from $7,400 to $8,000 with potential earnings up to $12,000 to $15,000 in five years; numerous local employers and available jobs awaited school graduates.

■ Immediately prior to this excluded offer, Mr. Farmer, upon qualifying questions, admitted that the Institute did not guarantee a job to its graduates or to Roger Dale Chaussard. In a similar vein, it could not be shown that Roger would graduate from the Institute despite his interest and good grades; and this is particularly true in Roger's situation because he had already experienced interruption due to his physical problems. Accordingly, both the future job and earnings, in these circumstances, were speculative, and the court did not abuse its discretion in excluding the offer. Such offer lacked the quality of "reasonable certainty" to qualify it for admission. *Thienes v. Harlin Fruit Co.,* 499 S.W.2d 223, 229–231

(Mo.App.1973); *Haley v. Byers Transportation Co.,* 414 S.W.2d 777, 781 (Mo.1967). Cf. and distinguish, e. g., *Turrietta v. Wyche,* 54 N.M. 5, 212 P.2d 1041 (1949), where the test of probability, i. e., reasonable certainty, was met in that the witness testified that he had a job for the disabled party; and *De Haas v. Pennsylvania R. Co.,* 261 Pa. 499, 104 A. 733 (1918), permitting "lessened capacity to earn in any actually available occupation" to be shown on the issue of a plaintiff's damages.

Appellant contends (II) that the court erred in giving Instructions 7 and 8, asserting (A) the evidence showed that Roger Dale Chaussard had·recovered from the January 7, 1971, injury and had returned to his employment by June 15, 1971, so there was no evidentiary basis for submission of future damage in the instructions; and (B) the November, 1971, injury was an independent occurrence for which defendant was not liable.

■ The language "and is reasonably certain to sustain in the future" may be included in instructions on the measure of damages if supported by the evidence. MAI 4.01; *Kramer v. May Lumber Co.,* 432 S.W.2d 617, 621 (Mo.App.1968); *Harrison v. Weller,* 423 S.W.2d 226, 231 (Mo.App.1967); *Zoeller v. Terminal Railroad Ass'n of St. Louis,* 407 S.W.2d 73, 77–78 (Mo.App.1966).

■ Doctors Schoolman and McCullough stated that Roger Dale Chaussard was permanently and totally disabled; that his accident and injuries in the January 7, 1971, occurrence contributed to his injury in November, 1971, and his own testimony was that his return to work was not predicated on recovery but on necessity. Aside from such showing, an instruction which includes future pain and suffering and future loss of earnings as considerations in an assessment of damages is not dependent upon a showing of permanent injury. *Simmons v. Jones,* 361 S.W.2d 860, 861–862 (Mo.App. 1962). Long continuance of conditions existing at trial is sufficient to warrant giving an instruction on damages from future pain

and suffering. *Jones v. Allen,* 473 S.W.2d 763, 766 (Mo.App.1971). Consequently, it may not be said in this case that there was no evidentiary basis for modification of MAI 4.01 to include submission of future damages. See also *Young v. Frozen Foods Express, Inc.,* 444 S.W.2d 35, 41 (Mo.App. 1969); *Moore v. Huff,* 429 S.W.2d 1 (Mo. App.1968); *Gaynor v. Horwitz,* 464 S.W.2d 537 (Mo.App.1971); *Pryor v. American Oil Co.,* 471 S.W.2d 492 (Mo.App.1971). Cf. *Harrison v. Weller,* supra, where there was no evidence that the complaints at trial had persisted from the time and as a result of the accident.

In order to submit the question of defendant's liability for his November, 1971, injuries, Roger Dale Chaussard needed to show only that the January 7, 1971, injury, caused by defendant, caused or contributed to cause the November, 1971, (re)injury. *Bowyer v. Te-Co., Inc.,* 310 S.W.2d 892 (Mo.1958). Missouri follows the general rule that a person injured due to negligence of another is entitled to recover all damages proximately traceable to the original negligence, including subsequent aggravation which the law regards as a natural result of the original injury, even though some intervening agency may have contributed to the result. *State ex rel. Smith v. Weinstein,* 398 S.W.2d 41, 44 (Mo. App.1965). This was satisfied by the testimony of Doctors Schoolman and McCullough that Roger's January 7, 1971, injury contributed to his reinjury November 22, 1971. Cf. *Herr v. Ruprecht,* 331 S.W.2d 642 (Mo.1960), where doctors' statements that the condition of plaintiff's right knee following the original injury "played a part" in a latter fall as opposed to contributing to cause such latter fall was properly discounted as "nothing but speculation." Consequently, it may not be said that the court erred in modifying MAI 4.01 to submit damages that Roger may have suffered from the occurrence of November 22, 1971, since there was evidence that such injuries were caused or contributed to by the injuries in the occurrence of January 7, 1971.

*Homm v. Oakes,* 453 S.W.2d 679 (Mo.App. 1970); Notes on Use, MAI 4.01.

Appellant contends the court erred (III) "in admitting * * * testimony of witnesses Henry Smith and Ann Trantham * * * and Plaintiff's Exhibit 31, * * * medical and hospital bills in the amount of $7,887, for care and treatment of Roger Chaussard, which * * * had been paid by [his employer] GAF Corp. under Missouri Workmen's Compensation provisions; said evidence * * * was misleading and prejudicial * * *, especially as it included $4,354.29 of medical expenses incurred for treatment of the later injury of November, 1971."

There was evidence to show that defendant caused the injury of November, 1971, as well as the injury of January, 1971. These bills were shown to be the obligation of plaintiff for his medical care for those injuries. As such, they were admissible as evidence for which plaintiffs could be compensated, and their payment by a third party was immaterial. *Kickham v. Carter,* 335 S.W.2d 83 (Mo.1960); *Erbes v. Union Electric Co.,* 353 S.W.2d 659 (Mo.1962).

In so far as appellant's charge is that the very nature of these bills rendered them inadmissible, the point is not supported by authority. *Adams v. White,* 488 S.W.2d 289, 294 (Mo.App.1972); *Cady v. Kansas City Southern Railway Co.,* 512 S.W.2d 882 (Mo.App.1974).

Judgments affirmed.

All concur.